Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| MIRTA BETANCOURT VALENTÍN<br><br>Recurrente<br><br>v.<br><br>SUNRUN PR OPERATIONS LLC<br>MÁXIMO SOLAR INDUSTRIES, INC.<br><br>Recurridos | TA2026RA00181 | *Revisión Administrativa* procedente del Departamentos de Asuntos del Consumidor<br><br>Caso Núm.: SAN-2025-0021619<br><br>Sobre:<br>Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACO) |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Jueza Lotti Rodríguez

*Grana Martínez, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2026.

La recurrente señora Mirta Betancourt Valentín solicita que revisemos la Resolución en la que el Departamento de Asuntos del Consumidor (DACo) desestimó la querella presentada por esta contra Sunrun PR Operations y Máximo Solar Industries Inc., por falta de jurisdicción.[1]

Los recurridos, Máximo Solar Industries Inc. y Sunrun PR Operations presentaron por separado su oposición al recurso. Los hechos esenciales para entender la determinación que hoy tomamos se detallan a continuación.

I
**Hechos**

La señora Betancourt Valentín presentó una querella en el DACo contra Máximo Solar Industries Inc. y Sunrun, relacionada a la compra de un equipo de energía solar. La querellante alegó que (1) el equipo se dañó y tuvo que esperar que la garantía lo

---

[1] Véase Entrada Sistema Unificado de Manejo y Administración de Casos (Sumac) ante el Tribunal Apelativo (TA), Núm. 1. Apéndice Núm. 12.

reemplazara, (2) los técnicos iban a otra dirección, (3) durante el apagón tuvo que usar su generador y pagar gasolina, (4) la instalación fue defectuosa, (5) llamó para cancelar el contrato, pero no le contestaron y (6) contrató a Power Solar para que le instalara la placas.[2]

La querellada solicitó la desestimación de la querella por falta de jurisdicción. Máximo Solar alegó que la recurrente se allanó a resolver las disputas mediante arbitraje y renunció a acudir al tribunal o al foro administrativo.[3]

Por su parte, la recurrente alegó que el contrato era de adhesión y la cláusula de arbitraje lo convirtió en anulable, conforme al Artículo 1249 (g) del Código Civil de 2020. Además, argumentó que su consentimiento estuvo viciado porque (1) era hispanoparlante y el contrato tenía partes sustanciales en inglés, (2) los términos contractuales no eran claros y (3) es una persona de la tercera edad protegida por la Ley Núm. 121-2019 y 4) el proceso de arbitraje privado es oneroso, complejo y requiere una alfabetización digital y legal que resulta irrazonable exigir a una persona de su edad en estas circunstancias. Por último, adujo que su dirección en el contrato estaba incorrecta.[4]

El DACo desestimó la querella por falta de jurisdicción.[5] La agencia determinó probados los hechos siguientes. El 26 de febrero de 2020, las partes suscribieron un Contrato de Energía. La recurrida alquiló a la recurrente un sistema solar fotovoltaico para generar energía eléctrica. El contrato fue redactado en el idioma español. La dirección de la recurrente que consta en el contrato es distinta a la real. El acuerdo contiene los términos y condiciones que rigen la relación contractual entre las partes. Dicho acuerdo

---

[2] Id.
[3] Entrada Sumac Primera Instancia (PI), Núm. 4
[4] Entrada Sumac PI, Núm. 6.
[5] Entrada Sumac PI, Núm. 8.

contiene una cláusula de resolución de disputas y arbitraje. Las partes acordaron someterse al arbitraje en caso de no poder resolver sus disputas informalmente.[6]

El foro administrativo incluyó en sus determinaciones de hechos el texto de la cláusula de arbitraje. Por último, determinó los hechos a continuación. La recurrente solicitó la resolución del contrato, debido a que su dirección estaba errónea, y a que su consentimiento fue viciado, porque era hispanoparlante y el contrato tenía partes sustanciales en inglés. No obstante, la recurrente no presentó copia del contrato. La recurrida presentó una copia en el idioma español.[7]

La agencia no dio paso a las alegaciones para solicitar la resolución del contrato. El DACo concluyó que no hubo vicio en el consentimiento, porque el contrato se firmó en español y el error de dirección no anulaba los acuerdos. El 23 de febrero de 2026, ordenó el cierre y archivo de la querella por falta de jurisdicción sobre la materia.[8]

La recurrente presentó una moción de reconsideración[9] en la que alegó que el DACo, no consideró (1) las alegaciones de prácticas engañosas y desleales, (2) daños físicos a la propiedad y seguridad, (4) la aplicación del Artículo 1249(g), *supra,* del Código Civil y (4) el vicio del consentimiento por ofuscación tecnológica en perjuicio de una consumidora de ochenta años. Según la recurrente el DACo es la agencia con jurisdicción para atender las quejas del consumidor por (1) prácticas engañosas, (2) daños físicos al sistema eléctrico y riesgo inminente para la seguridad derivada de una instalación defectuosa, (3) la nulidad de la cláusula de arbitraje según el Artículo 1249 (g) *supra,* (4) el método de contratación digital

---

[6] Entrada Sumac PI, Núm. 8, Determinaciones de hechos 1-5 de la Resolución recurrida.

[7] Entrada Sumac PI, Núm. 8, Determinaciones de hechos 5, 7-8.

[8] Entrada Sumac PI, Núm. 8.

[9] Entrada Sumac PI, Núm. 9.

utilizado impidió el consentimiento libre e informado de una persona de la tercera edad.[10]

El DACo denegó la reconsideración. La agencia resolvió que no tenía discreción para evaluar la querella, porque las partes establecieron el arbitraje como el único mecanismo para resolver sus disputas.[11]

Inconforme, la recurrente presentó este recurso en el que alega que:

> Erró DACO al declinar jurisdicción y desestimar la querella por razón de una cláusula de arbitraje, sin atender la verdadera naturaleza de la controversia sometida, la cual incluye alegaciones de prácticas engañosas y desleales, daños a la propiedad, riesgo a la seguridad y reclamaciones que activan la función protectora, fiscalizadora y adjudicativa del foro administrativo.

> Erró DACO al no analizar ni adjudicar si la cláusula de arbitraje invocada por las querelladas era nula, inaplicable o inoponible bajo el Articulo 1249(g) del Código Civil de Puerto Rico de 2020, particularmente en el contexto de un contrato de adhesión utilizado para excluir la competencia de una agencia reglamentadora.

> Erró DACO al no atender ni adjudicar el planteamiento de vicio del consentimiento y ofuscación tecnológica digital de una consumidora de edad avanzada, antes de concluir que la cláusula arbitral era válida y suficiente para desplazar la jurisdicción administrativa.

> Erro DACO al reducir la controversia a un asunto privado de arbitrabilidad contractual y al desestimar la querella sin entrar en los méritos, frustrando la política pública protectora del consumidor, el acceso efectivo a la justicia administrativa y la misión estatutaria indelegable que el ordenamiento le confiere a DACO.

## II
## El Arbitraje

En nuestra jurisdicción existe una vigorosa política pública a favor del arbitraje. Según la doctrina vigente, el arbitraje existe cuando dos partes se obligan contractual y voluntariamente a someter sus disputas a un tercero imparcial y capacitado para decidir de manera justa. El árbitro emitirá la decisión en un laudo

---

[10] Entrada Sumac PI, Núm. 9.
[11] Entrada Sumac PI, Núm. 10.

que tendrá efecto final y obligatorio entre las partes. El Tribunal Supremo de Puerto Rico ha reconocido que el arbitraje es un método alterno para la solución de conflictos. Su propósito es que las partes presenten sus controversias ante un ente neutral autorizado para adjudicar e imponer una decisión a las partes. *Kendall Hope Tucker v. Money Group LLC y otros,* 2026 TSPR 9.

El *Federal Abitration Act* (FAA)[12] establece la política pública federal a favor del arbitraje. Sus disposiciones aplican a los acuerdos de arbitraje en Puerto Rico que satisfagan los dos criterios siguientes (1) la existencia de un acuerdo de arbitraje válido y (2) que ese acuerdo afecte el comercio interestatal. Los acuerdos de arbitraje que afecten el comercio estatal serán regulados por el FAA y sus disposiciones ocuparán el campo. La aplicación de la FAA desplaza cualquier reglamentación estatal que discrimine de su faz con el arbitraje. Toda duda sobre la procedencia del arbitraje debe resolverse a su favor conforme a lo pactado. Los tribunales no tienen discreción, porque están obligados a ordenar a las partes a acudir al arbitraje. *Kendall Hope Tucker v. Money Group LLC y otros, supra.*

El arbitraje es una figura inherentemente contractual. Por esa razón no existe, sino ha sido acordado contractualmente. Sus cláusulas tienen que evaluarse y validarse como en todo contrato, conforme a la autonomía de los contratantes. *Kendall Hope Tucker v. Money Group LLC y otros, supra*; *Aponte Valentin v. Pfizer Pharmaceuticals*, LLC, 208 DPR 263, 279 (2021). La tarea de determinar si las partes están obligadas a arbitrar es inherentemente judicial. Los tribunales tienen que auscultar si (1) existe un convenio de arbitraje, (2) el convenio alcanza determinada controversia y (3) el convenio alcanza una disputa relacionada a la duración o expiración del contrato. *Kendall Hope Tucker v. Money*

---

[12] 9 USCA sec. 1 et seq.

*Group LLC y otros, supra.* El Tribunal Supremo de Estados Unidos ha resuelto que los tribunales solo pueden invalidar un acuerdo de arbitraje bajo las mismas defensas que aplican a todo contrato. *Aponte Valentín et al. v. Pfiezer Pharm,* supra, pág. 283.

### Doctrina General de los Contratos

Los contratos tienen fuerza de ley entre las partes. Artículo 1233 del Código Civil de 2020, 31 LPRA sec. 9754. Las relaciones contractuales se rigen por el principio de la autonomía de la voluntad. Las partes pueden acordar cualquier cláusula que no sea contraria a la ley, la moral o el orden público. Artículo 1232 del Código Civil de 2020, 31 LPRA sección 9763. Cuando los términos de un negocio jurídico son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras. La buena fe en los contratos se presume. Artículo 354 del Código Civil de 2020, 31 LPRA sección 6342. Las normas que rigen los contratos convergen con el principio de la buena fe contractual. Por esa razón, al momento de interpretar un contrato en proceso se presupone lealtad, corrección y buena fe en su redacción. V*DE Corp. v. F&R Contractors* 180 DPR 21, 35 (2010).

### Contratos de Adhesión

Un contrato es de adhesión, cuando el aceptante se ve precisado a aceptar un contenido predispuesto. Sus cláusulas se interpretarán en sentido desfavorable a la persona que lo redacte y en favor de la que se vio precisada a aceptar su contenido. Artículo 1248 del Código Civil de 2020, 31 LPRA sección 9802. Por su parte, el Artículo 1249 del Código Civil de 2020, 31 LPRA sección 9803, contiene las cláusulas que se consideran abusivas en los contratos de adhesión y que son especialmente anulables. Según el inciso (g) las cláusulas en las que se excluye la jurisdicción de una agencia reglamentadora son anulables.

**Interrupción de la Prescripción**

La prescripción de las acciones se interrumpe mediante la presentación de una (1) demanda, (2) reclamación administrativa o (3) reclamación arbitral, por el acreedor contra el deudor en resguardo del derecho que le pertenece. Artículo 1197 del Código Civil de 2020, 31 LPRA sección 9489

**Ley de Transformación y Alivio Energético, Ley Núm. 57-2014**

El Artículo 6.4 de la Ley Núm. 57-2014, 22 LPRA sección 1054c confiere al Negociado de Energía jurisdicción para atender casos y controversias sobre la revisión de la facturación de las compañías de energía a sus clientes y los servicios de energía eléctrica. Por su parte, la sección 3.04 del Reglamento de Procedimiento Adjudicativo, Avisos de Incumplimiento Revisión de Tarifas e Investigaciones, Reglamento Núm. 8543 de 18 de octubre de 2014, establece un término de treinta días para presentar querellas y solicitar revisión al Negociado de Energía de la decisión final de una compañía de servicios eléctricos. El término de treinta días comenzará a contar desde que la compañía de servicio emite su decisión final sobre el asunto.

III

La recurrente cuestiona que el DACo desestimó la querella sin auscultar la validez de la cláusula de arbitraje. Su representación legal argumenta que la agencia no consideró (1) el carácter adhesivo de contrato, (2) las alegaciones de vicio de consentimiento, prácticas engañosas, daños a la propiedad y riesgo a la seguridad, (3) que la recurrente es una persona de ochenta años, y (4) que la recurrida obtuvo su consentimiento viciado, mediante un contrato digital y sin explicarle la cláusula que la privó de acudir al DACo. Además, aduce, que la recurrida hizo una instalación defectuosa que ocasionó anomalías severas en el sistema eléctrico.

Máximo Solar sostiene que la recurrida pactó que las disputas relacionadas al contrato en controversia estarían sujetas a arbitraje y que no serían ventiladas en DACo. La recurrida argumenta que es nula toda interpretación del Artículo 1249 (g) *supra,* que invalide un contrato de arbitraje que afecte el comercio interestatal. Máximo Solar aduce que dicha interpretación viola la cláusula de supremacía federal. Sunrun alega que la cláusula de arbitraje privó de jurisdicción al DACo y que el Artículo 1249 (g) *supra,* no aplica porque las partes acordaron que el contrato se regía por la Ley Federal de Arbitraje.

La controversia se reduce a determinar si DACo tiene jurisdicción para atender y resolver la querella.

Las partes acordaron en la Sección 11 realizar la resolución de disputas de la manera siguiente.

RESOLUCIÓN DE DISPUTAS, ARBITRAJE, RENUNCIA A LA DEMANDA COLECTIVA: Esta Sección establece el procedimiento para resolver las Disputas relevantes al contrato (la Disputa). A menos que se acuerde lo contrario por escrito, las Partes aceptan continuar cumpliendo las obligaciones correspondientes de cada Parte establecidas en este contrato mientras se resuelve la Disputa.

RESOLUCION INFORMAL DE DISPUTAS. Las Partes aceptan intentar primero resolver cualquier Disputa de manera informal y de buena fe. Asimismo, usted acepta enviar una notificación escrita de la Disputa a la dirección que figura en la Sección G (12) del Contrato. Sunrun enviará una notificación escrita de la Disputa a la dirección del Hogar. Si las Partes no llegan a un acuerdo informal para resolver la Disputa dentro de los 45 días posteriores a la recepción de la notificación de Disputa, usted o Sunrun podrán comenzar las acciones formales que se detallan a continuación. Todos los estatutos de limitación y defensa aplicables basados en el paso del tiempo se contabilizarán para los 45 días durante los cuales las partes intentan resolver una Disputa de manera informal. Si usted reclama deficiencias en la instalación o el funcionamiento del Sistema solar, debe permitirnos inspeccionar visualmente el Sistema solar y obtener o descargar los datos, de rendimiento pertinentes del Sistema solar.

ARBITRAJE si las Partes no pueden resolver la Disputa de manera informal la Disputa, incluyendo la determinación del alcance o la aplicabilidad de este acuerdo de arbitraje, se determinará mediante arbitraje vinculante ante un árbitro. El arbitraje será el único medio de Resolución de Controversias, salvo que una de las partes tenga permitido presentar una reclamación ante un tribunal que entiende en causas menores (en tanto y en cuanto el monto controvertido sea menor que el límite de reclamación para ese tribunal) en lugar de someterse a arbitraje, siempre que este tribunal tenga competencia

sobre la controversia, y la controversia sea exclusivamente en su nombre y no en nombre de otra persona, si la controversia se transfiere a otro Tribunal o se apela ante otro tribunal, en cualquier momento Sunrun se reserva el derecho de optar porque la controversia se resuelva por arbitraje conforme aquí se estipula. El arbitraje implica que usted renuncia a su derecho de juicio por jurado y que todas las Disputas serán decididas por un árbitro, este acuerdo para arbitrar la Disputa está regido por la Ley Federal de Arbitraje (Federal Arbitration Act, FAA), el arbitraje será administrado por JAMS de conformidad con sus reglas y procedimientos de arbitraje simplificado. El arbitraje estará a cargo de la oficina de JAMS más cercana al hogar. La Sentencia sobre la decisión podrá ser presentada en cualquier tribunal que tenga jurisdicción esta cláusula, no impide que las partes pretendan medidas provisionales para contribuir al arbitraje por parte de un tribunal que tenga jurisdicción competente, el árbitro podrá en el laudo asignar la totalidad o parte de los costos del arbitraje incluidos los honorarios razonables de abogados de la parte vencedera. Sin perjuicio de disposición en contrario de esta sección o este contrato, lo estipulado en este contrato no tiene la intención de obstaculizar o restringir su capacidad de solicitar asistencia de la Comisión de Energía de Puerto Rico (Puerto Rico Energy Bureu) para revisar las facturas o resolver las controversias en virtud de los Artículos 6.4 y 6.27 de la Ley de Transformación y Alivio Energético de Puerto Rico y sus Reformas (Ley de Puerto Rico 57-2014).

DACo se declaró correctamente sin jurisdicción. La agencia no tiene jurisdicción, porque el arbitraje es una figura inherentemente contractual y las partes consintieron a someter sus disputas a ese procedimiento. Ambas acordaron el arbitraje como el único medio de resolver sus controversias. La recurrente invoca la aplicación del Artículo 1249 (g) *supra,* en el que el legislador determinó la anulabilidad de los contratos de adhesión, con cláusulas que excluyen la jurisdicción de una agencia reglamentadora. Sus argumentos no son convincentes, porque las partes acordaron expresamente que el acuerdo de arbitraje estaría regido por la Ley de Arbitraje Federal, *supra.* El Artículo 1249 (g) *supra,* no puede prevalecer sobre la legislación federal que ocupa el campo sobre la materia y establece una política pública a favor del arbitraje. Su aplicación desplaza cualquier reglamentación estatal que discrimine de su faz contra el arbitraje.

Sin embargo, el arbitraje no es el único medio que tiene la recurrente para hacer sus reclamos. Las partes acordaron expresamente que lo estipulado, no obstaculizaría ni restringiría el

derecho a solicitar la asistencia de la Comisión de Energía de Puerto Rico para revisar las facturas o resolver las controversias en virtud de los Artículos 6.4 y 6.27 de la Ley de Transformación y Alivio Energético, *supra.* Conforme a lo pactado, la recurrente tiene derecho a hacer sus reclamos contra la recurrida ante la Comisión de Energía de Puerto Rico.

### IV

Se modifica la Resolución en la que el DACo se declaró sin jurisdicción, únicamente para reconocer el derecho de la recurrente a acudir a la Comisión de Energía. Por todo los demás, queda confirmada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones